IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 28, 2001

## STATE OF TENNESSEE v. CHARLES W. JONES

**Appeal from the Criminal Court for Davidson County**
**No. 99-D-2321     Steve R. Dozier, Judge**

_____

**No. M2001-00353-CCA-R3-CD - Filed December 13, 2001**

_____

The Defendant, Charles William Jones, was convicted of second degree murder in the Criminal Court of Davidson County. After a sentencing hearing, the trial court sentenced the Defendant to twenty-two years in the Department of Correction. In this appeal, the Defendant contends that (1) the evidence presented at trial was insufficient to support a finding of guilt beyond a reasonable doubt[1] and (2) the trial court improperly applied two enhancement factors in sentencing the Defendant. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which JERRY L. SMITH and NORMA MCGEE OGLE, JJ., joined.

Sam E. Wallace, Jr., Nashville, Tennessee, for the appellant, Charles W. Jones.

Paul G. Summers, Attorney General and Reporter; P. Robin Dixon, Jr., Assistant Attorney General; Victor S. Johnson, District Attorney General; and Jon Seaborg, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

On July 2, 1999, the Defendant and three or four other young men entered a housing project in Nashville. Earlier in the day, the young men had attended a cook-out in the housing project where a fight had occurred. Marcus Fitzgerald was driving his mother's black Cadillac automobile with the Defendant sitting in the front passenger's seat. Michael Fanning and Corey Smith were sitting

---

[1]In his brief, the Defendant makes two arguments concerning the sufficiency of the evidence. First, the Defendant contends that the evidence is insufficient to support a finding of guilt beyond a reasonable doubt, and, second, that the evidence at trial was insufficient to rebut the Defendant's claim of self-defense. We will address these issues together.

in the back seat of the car. At approximately midnight, the car pulled to the side of a road within the housing project in order for Mr. Fitzgerald to talk with a friend, Wesley Holmes.

Mr. Holmes was standing with a group of people which included Justin Brown, Montez Mayberry, Cory Bryant, and Eric Harvey, the victim. Mr. Holmes approached the car and began talking with Mr. Fitzgerald. During the conversation, words were exchanged between the Defendant and members of the crowd and a single shot was fired. The Defendant and the individuals inside the car testified that the single shot was fired by someone outside their vehicle and that they thought someone was shooting at the car. The witnesses standing near the victim testified that the Defendant fired the single shot into the air and that no shots were fired except by the Defendant.

After the single shot was fired, the Defendant and the group standing nearby again exchanged words. The Defendant then stood up through the sunroof of the Cadillac and began firing into the crowd. One of the bullets struck the victim. The victim later died of the gunshot wound.

The Defendant testified that one of the members of the crowd threatened him. The Defendant stated that Mr. Brown told him that he would "be right back with [his] gun." At this point, the Defendant contends that he fired several shots into the air through the sunroof and directed Mr. Fitzgerald to drive away. The Defendant maintained that he did not shoot into the crowd and that he did not intend to hurt anyone. The Defendant presented evidence that Michael Johannes, a passenger in another car, fired once into the crowd, and was later overheard admitting to the murder of the victim.

Metro Police officers arrived within minutes and discovered six .9 millimeter shell casings. Two more .9 millimeter shell casings were later found under the hood of Mr. Fitzgerald's car. Steve Scott of the Tennessee Bureau of Investigation testified that all of the shell casings were fired from the same weapon.

## SUFFICIENCY

The Defendant first contends that the evidence presented by the State at trial was insufficient to convict him of a knowing killing as required in a second degree murder case. Additionally, the Defendant suggests that because his claim of self-defense was unrebutted by the State, the jury was required to find that he acted in self-defense. We must respectfully disagree with the Defendant's contentions.

Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." Evidence is sufficient if, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Smith, 24 S.W.3d 274, 278 (Tenn. 2000). In addition, because conviction by a trier of fact destroys the presumption of innocence and imposes a presumption of

guilt, a convicted criminal defendant bears the burden of showing that the evidence was insufficient. See McBee v. State, 372 S.W.2d 173, 176 (Tenn. 1963); see also State v. Buggs, 995 S.W.2d 102, 105-06 (Tenn. 1999); State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

In its review of the evidence, an appellate court must afford the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." Tuggle, 639 S.W.2d at 914; see also Smith, 24 S.W.3d at 279. The court may not "re-weigh or re-evaluate the evidence" in the record below. Evans, 838 S.W.2d at 191; see also Buggs, 995 S.W.2d at 105. Likewise, should the reviewing court find particular conflicts in the trial testimony, the court must resolve them in favor of the jury verdict or trial court judgment. Tuggle, 639 S.W.2d at 914. All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact, not the appellate courts. See State v. Morris, 24 S.W.3d 788, 795 (Tenn. 2000); State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987).

Mr. Fitzgerald, Mr. Smith, and Mr. Fanning, who were all in the car with the Defendant, testified that they saw the Defendant go through the sunroof and then immediately heard gunfire. Mr. Mayberry, the Defendant's cousin, was standing next to the victim at the time of the shooting and testified that he saw the Defendant rise through the sunroof with a gun in his hand and shoot into the crowd. Mr. Bryant, the victim's best friend, also testified that he saw the Defendant fire a shot into the air and then begin shooting into the crowd. Metro Police found .9 millimeter shell casings fired from a single gun at the scene of the crime and under the hood of the car in which the Defendant was riding. Based on the above facts, we find sufficient evidence to support the jury's verdict of guilty of second degree murder beyond a reasonable doubt.

The Defendant further contends that the State did not sufficiently rebut his self-defense claim. When self-defense is raised by a defendant, the State has the burden of proving beyond a reasonable doubt that a defendant did not act in self-defense. See State v. Belser, 945 S.W.2d 776, 782 (Tenn.Crim.App. 1996). Tennessee Code Annotated section 39-11-201(a)(3) provides that "No person may be convicted of an offense unless.... [t]he negation of any defense to an offense defined in this title" is proven beyond a reasonable doubt. Self-defense qualifies as such a defense. See Tenn.Code Ann. §§ 39-11-601 and 39-11-611.

The Defendant relies upon the testimony of the passengers in the car to establish his self-defense claim. Marcus Fitzgerald, Michael Fanning, Corey Smith, and the Defendant all testified that they were frightened and believed that someone was shooting at their car. The Defendant testified that he fired his gun into the air in order to frighten the attackers and allow time for Mr. Fitzgerald to drive them to safety.

This testimony is directly in conflict with the testimony presented by the State. Mr. Mayberry and Mr. Bryant testified that they saw the Defendant rise through the sunroof and fire directly into the crowd. Mr. Bryant was actually struck in the face with broken glass from the windshield of the

car behind which he was hiding. Mr. Bryant also testified that he saw the Defendant fire the first shot. It is clear from the verdict that the jury credited the testimony of Mr. Bryant and Mr. Mayberry.

A defense of self-defense is a question for the exclusive determination of the jury. See State v. Goode, 956 S.W.2d 521, 527 (Tenn.Crim.App. 1997); State v. Ivy, 868 S.W.2d 724, 727 (Tenn.Crim.App. 1993). We find ample evidence within the record to support the rejection of the Defendant's self-defense claim.

Accordingly, we find that there is sufficient evidence within the record to support the Defendant's conviction for second degree murder and further that the State adequately rebutted the Defendant's self-defense claim. This issue is without merit.

## SENTENCING

Finally, the Defendant challenges the trial court's imposition of a twenty-two year sentence. Specifically, the Defendant contends that the trial court erred in applying enhancement factor nine (9), that the Defendant possessed or employed a deadly weapon during the commission of the offense, because that factor is encompassed in the offense itself, and enhancement factor ten (10), that the defendant showed no hesitation in committing a crime with great risk to human life, because the State did not charge the Defendant with any offenses involving danger to bystanders. See Tenn. Code Ann. § 40-35-114 (9), (10). The Defendant also contends that his sentence should be mitigated because he acted in self-defense and because he has been shot twice in apparent retaliation for the killing of the victim in this case.

When an accused challenges the length, range, or manner of service of a sentence, this Court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

When conducting a de novo review of a sentence, this Court must consider: (a) the evidence, if any, received at the trial and sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) any statutory mitigating or enhancement factors; (f) any statement made by the defendant regarding sentencing; and (g) the potential or lack of potential for rehabilitation or treatment. See Tenn. Code Ann. §§ 40-35-102, -103, -210; State v. Brewer, 875 S.W.2d 298, 302 (Tenn. Crim. App. 1993); State v. Thomas, 755 S.W.2d 838, 844 (Tenn. Crim. App. 1988).

If our review reflects that the trial court followed the statutory sentencing procedure, that the court imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings of fact are

adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. State v. Pike, 978 S.W.2d 904, 926-27 (Tenn. 1998); State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

The Defendant's contention that the use of a firearm is included within the offense of second degree murder is without merit. Second degree murder is defined as "a knowing killing of another." Tenn.Code Ann. § 39-13-210(a)(1). Possession or use of a firearm during the offense is not an element of second degree murder and may be applied to enhance a defendant's sentence. See State v. Hampton, 24 S.W.3d 823, 831 (Tenn.Crim.App. 2000); State v. Shelton, 854 S.W.2d 116, 123 (Tenn.Crim.App. 2000).

The Defendant also argues that the Court erred in enhancing his sentence based upon a lack of hesitation in committing a crime where the risk to human life was great. See Tenn. Code Ann. § 40-35-114(10). The Defendant contends this enhancement factor is not applicable because the Defendant was not charged with any offense involving one of the many bystanders. We must respectfully disagree.

The legislature has placed only two limitations on a trial court's application of enhancement factors under Tennessee Code Annotated section 40-35-114. First, the factor must be "appropriate for the offense," and, second, it must not be an essential element of the offense. See Tenn. Code Ann. § 40-35-114; State v. Jones, 883 S.W.2d 597, 603 (Tenn. 1994). In the present case, the evidence showed that the Defendant fired a .9 millimeter handgun into a crowd of ten to fifteen people. The Defendant was convicted of second degree murder for the killing of one of the members of that crowd. Finding that the Defendant showed no hesitation in committing an offense in which the risk to the lives of every other member of that crowd was high was an appropriate and clearly supported finding by the trial court. See State v. Bingham, 910 S.W.2d 448, 452 (Tenn.Crim.App. 1995); State v. Lambert, 741 S.W.2d 127, 134 (Tenn.Crim.App.1987) (application of enhancement factor (10) upheld in a vehicular homicide by intoxication case where, prior to striking the victims, the defendant recklessly drove through streets and sidewalks crowded with people); State v. Oneal Sanford, No. E1999-02089-CCA-R3-CD, 2001 WL 68312 at *9 (Tenn.Crim.App., Knoxville, June 18, 2001) (application of enhancement factor (10) upheld when there was a great risk to the life of someone other than the victim of the criminally negligent homicide).

The Defendant finally contends that the trial court erred in not mitigating his sentence because he acted in self-defense and because he has been shot twice in apparent retaliation for the death of the victim. The Defendant's self-defense claim was rejected by the jury and we find no error by the trial court in refusing to consider that claim in mitigating the Defendant's sentence. The trial court also found that the Defendant's injuries incurred in apparent retaliation for the killing of the victim had no bearing on the Defendant's sentence. We find no error in the trial court's decision.

Accordingly, the trial court properly sentenced the Defendant to twenty-two years in the Department of Correction.

**CONCLUSION**

For the foregoing reasons, we find that the evidence sufficiently supports the Defendant's conviction for second degree murder and the trial court properly sentenced the Defendant. The judgment of the trial court is AFFIRMED.

_____
DAVID H. WELLES, JUDGE